UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURRI LAW, P. A.,

    Petitioner,

v.   Case No: 8:18-cv-2879-T-36JSS

BYZANTINE CATHOLIC EPARCHY OF
PHOENIX,

    Respondent.
_____/

## ORDER

This matter comes before the Court upon Petitioner's Motion for Summary Judgement and Supporting Memorandum [Docs. 28, 29], Respondent's response [Doc. 36], Respondent's Motion for Summary Judgment [Doc. 43], and Petitioner's response [Doc. 44]. The Court, having duly considered the submissions and being fully advised in the premises, will **DENY** Petitioner's Motion for Summary Judgement and **GRANT** Respondent's Motion for Summary Judgment.

**I.   BACKGROUND**

*The facts*[1]

Around November 26, 2018, Burri Law, P.A., a Florida corporation ("Petitioner"), filed a petition to compel arbitration of an attorney's fee dispute with its former client, the Byzantine Catholic Eparchy of Phoenix, an Arizona corporation ("Respondent"). [Doc. 1]. The petition alleged, and there is no dispute, that the parties entered into Letter Agreements ("Agreements") on

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including affidavits and attachments thereto.

1

January 14, 2016, and again on February 22, 2016. *See id.* ¶¶ 5, 6, Doc. 26 ¶¶ 5, 6. Both Agreements contained an Arbitration provision, which provides:

> The provisions regarding fees for legal services contained in Rule 4-1.5 of the Rules Regulating the Florida Bar (Chapter 4, Rules of Professional Conduct) are by reference incorporated herein. Further, the parties expressly adopt and agree to be bound by Chapter 14[2] of the Rules Regulating The Florida Bar concerning the Fee Arbitration Program of The Florida Bar, such that any dispute regarding attorney's fees paid, charged, or claimed for legal services rendered in connection with this representation shall be resolved through binding arbitration.
>
> NOTICE: This agreement contains provisions requiring arbitration of fee disputes. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

[Doc. 1-1 ¶ 10, Doc. 1 ¶ 8, Doc. 26 ¶ 8]. The Agreements also contained various fee provisions including one specifying that "[the] Firm will not send an invoice to you for any attorney's fees incurred in this matter, including the flat fee, unless you terminate our relationship. In that case, you will be billed for the reasonable value of the Firm's services in *quantum meruit*." [Doc. 1 at 8, 16] (*italics* added).

After at least two years as counsel to Respondents,[3] Petitioner was terminated around August 2, 2018. [Doc. 1 ¶ 7, Doc. 28-1 ¶ 12, Doc. 36 at 5]. At the time, Petitioner was litigating in

---

[2] Chapter 14 of the Rules Regulating the Florida Bar incorporates the Florida Arbitration Code. R. Regulating Fla. Bar 14-1.4 ("The Florida Arbitration Code (chapter 682, Florida Statutes), shall apply to arbitrations conducted under this chapter except as modified by or in conflict with these rules.").

[3] Billing records reflect fee entries from November 2015 through August 2018. [Doc. 36-2].

the U.S. District Court for the District of Arizona, claims against various defendants relating to Respondent's employee benefits plan. [Doc. 28-1 ¶ 12, Doc. 28-2 ¶ 8]. Petitioner filed a motion to withdraw on August 13, 2018, and that motion was granted by order dated August 29, 2018. *See id.* Subsequently, Petitioner furnished its invoice for fees and costs to Respondent's General Counsel, Dennis Naughton, by email on September 11, 2018. [Doc. 28-1 ¶ 13, Doc. 28-2 ¶]. The invoice, dated September 7, 2018, reflected a total due in the amount of $701,508.67. [Doc. 36-2 at 2, 66].

Having received no correspondence from Respondent, Petitioner furnished written notice to Respondent on October 31, 2018, of its intent to submit the fee dispute to arbitration in accordance with the arbitration provision in the Agreements. [Doc. 28-1 ¶ 14, 28-2 ¶ 10]. By correspondence dated November 14, 2018, Petitioner was notified that Respondent refused to pay the expenses claimed by Petitioner, and also refused to proceed to arbitration or otherwise comply with the arbitration provision. *See id.*

The instant petition was then filed, seeking an order directing that "all disputes between Petitioner and Respondent regarding attorney fees paid, charged or claimed by Petitioner from Respondent for legal services in connection with the Letter of Agreement . . . proceed to arbitration as provided in that Agreement." [Doc. 1 at 5]. In its response, Respondent admitted that the Agreements incorporated the arbitration provision, denied various allegations of the petition and asserted numerous affirmative defenses. [Doc. 26]. The parties have now both moved for summary judgment.

### *The Motions for Summary Judgment*

In its Motion, Petitioner contends that there is no genuine dispute as to any fact material to the application for an order compelling arbitration pursuant to Sections 4 and 6 of the Federal

Arbitration Act, 9 U.S.C. § 4 and § 6, and that Petitioner is entitled to a Final Order compelling arbitration as a matter of law. [Doc. 28 at 1]. In response, Respondent contends that the subject dispute does not fall within the Florida Bar's fee arbitration provision and the arbitration provision in Petitioner's Agreements does not comply with the Florida Bar Rules and should not be enforced. [Doc. 36 at 1, 5]. Respondent further contends that the Court should proceed to a trial on the enforceability of the agreement. *See id.* at 6-7.

Respondent then filed its motion for summary judgment, [4] contending that the Court should hold that the Agreements are "unenforceable on its face" because the notice in the Agreements was not printed in bold type as required by Florida Bar Rule 4-1.5(i). [Doc. 43 at 3]. Respondent also contends the Florida Bar Rules preclude arbitration in this case because (i) there are bona fide disputed issues of fact other than the amount of or entitlement to legal fees and (ii) the evidence bearing on the disputed issues of fact cannot be heard in less than 8 hours. *See id.* at 4. In response, Petitioner argues that the naked assertion that the written notices contained in the Agreements are not "bold" is insufficient to prevent the Court's summary order compelling arbitration because Respondent offers no unequivocal denial of actually seeing, reading through, and deliberating the notice or warning. [Doc. 44 at 6-7]. Petitioner further argues that courts interpret the Rule as requiring that a law firm establish that it advised the client in writing that independent legal advice should be obtained and that if the firm could not establish this, then it could show that the provision was in bold print, and "the Rule does not specify that the warning be in any particular typeface, font or font size, or even in all capital letters." *See id.* at 4-5. Next, Petitioner argues that the matter is before the Court exclusively on its motion for an order compelling arbitration, so whatever claim

---

[4] Respondent incorporated by reference the arguments and facts in its Response to Petitioner's motion for summary judgment.

4

Respondent may put forward does not recast the claim as one for affirmative relief. *Id.* at 8-9. As to the Respondent's claim that the hearing time will exceed more than eight hours, Petitioner argues that this is but a "procedural issue" to be decided by the arbitrator, not a "substantive issue" of arbitrability to be decided by the Court. *Id.* at 9-10.

## II. LEGAL STANDARD

Generally, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id*. The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union,*

5

*Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Oakley*, 744 F.2d at 1555–56.

### III.   DISCUSSION

The petition to compel arbitration is brought pursuant to Sections 4 and 6 of the Federal Arbitration Act, 9 U.S.C. §4 and §6. Under Section 4 of the Act "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Generally, there is a strong preference for arbitrating disputes. *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (11th Cir. 2003); *Bustamante v. Charlotte Motorsports, LLC*, No. 2:08-CV-36-FTM-34DNF, 2008 WL 11473256, at *1 (M.D. Fla. July 23, 2008) ("The preference for arbitration in lieu of litigation is embodied in the Federal Arbitration Act."). Notwithstanding this, arbitration agreements are placed on equal footing with contracts and must be enforced according to their terms. *Fialek v. I.C. Sys., Inc.*, No. 3:18-CV-136-J-39MCR, 2019 WL 660824, at *3 (M.D. Fla. Jan. 24, 2019), *report and recommendation adopted*, No. 3:18-CV-136-J-39MCR, 2019 WL 2206968 (M.D. Fla. Mar. 14, 2019). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tuttle v. Credit Acceptance Corp.*, No. 8:18-CV-2181-T-23JSS, 2018 WL 6621374, at *1 (M.D. Fla. Oct. 31, 2018) (*citing Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002)), *report and recommendation adopted,* No. 8:18-CV-2181-T-23JSS, 2018 WL 6621359 (M.D. Fla. Nov. 16, 2018). Additionally, the agreement must be valid under state law. *Id.*

Under Florida law, "an arbitration agreement is valid if three questions are affirmatively answered: '(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived.' " *Id.* at 2 (*quoting Mora v. Abraham Chevrolet–Tampa, Inc.*, 913 So. 2d 32, 33 (Fla. 2nd DCA 2005)); *Louis v. Aetna Health Inc.*, No. 616CV1922ORL22DCI, 2017 WL 6939166, at *3 (M.D. Fla. Jan. 13, 2017) (stating same). "[A] valid written agreement to arbitrate exists so long as there was an offer, acceptance, and sufficient specification of essential terms." *Id.* As to the second inquiry, the scope of the disputes subject to arbitration is defined by the language of the agreement to arbitrate. *Fialek*, 2019 WL 660824, at *4 (*citing Gamble v. New England Auto Fin., Inc.*, 735 F. App'x 664, 665 (11th Cir. 2018)). The federal substantive law of arbitrability controls this determination, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Lastly, the Eleventh Circuit has established a two-part test for determining whether a party has waived its right to arbitrate, first deciding if, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and, then deciding "whether, by doing so, that party has in some way prejudiced the other party." *Mason v. Coastal Credit, LLC*, No. 3:18-CV-835-J-39MCR, 2018 WL 6620684, at *6 (M.D. Fla. Nov. 16, 2018) (*quoting Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002)).

Here, the first two of the three questions are at issue. Whether Florida Bar Rule 4-1.5(i) precludes arbitration because the arbitration provision in the Agreements was not in bold, goes to the validity of the agreement to arbitrate. The claim that Rule 14-1.2(a) precludes arbitration because there are disputed issues of fact other than the entitlement to legal fees and deciding these

7

additional issues will plainly exceed the maximum threshold of the Florida Bar's arbitration procedure of 8 hours goes to the question of arbitrability. Both will be addressed.

### *Validity of Arbitration Agreement*

There is no issue as to the offer, acceptance, and sufficient specification of the essential terms of the agreement here. *See Tuttle*, 2018 WL 6621374, at *2. Instead, the issue is whether the arbitration provision comported with Florida Bar Rule 4-1.5, and if not, whether that renders the arbitration agreement unenforceable.

Rule 4-1.5(i) indicates that a lawyer shall not make an agreement containing mandatory arbitration provisions unless the agreement contains in "bold print" the specific notice advising the potential client to consult with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. R. Regulating Fla. Bar 4-1.5. This provision of the Rule is in bold print. The agreement here did, in fact, contain the requisite notice. However, the notice was not in bold typeface. Respondent takes the position that any reasonable reader of the Rule would understand "bold print" to mean **bold typeface**, just like the Rule is, which exemplifies what it requires. [Doc. 36 at 13]. Respondent further distinguishes being in "bold print" from being capitalized or being prominently displayed. *Id.* at 13-14. Petitioner contends that this argument is unavailing because "Bold" is not defined in the Rule, and the Rule does not specify that the warning be in any particular typeface, font or font size, or even in all capital letters, and that in any event, "the language is distinctly set-off in a separate paragraph within the section conspicuously entitled 'Arbitration', with the word 'NOTICE' in all capital letters emblazoned at the forefront of

8

the warning." [Doc. 44 at 5]. Petitioner further argues—in essence—that the overarching concern of the Rule is notice to the client, and there is no dispute that notice was provided here. *Id.* at 4.[5]

Florida courts have construed arbitration clauses in retainer agreements against the attorney and have held that they must comply with the Rules Regulating The Florida Bar. *See Mintz & Fraade, P.C. v. Beta Drywall Acquisition, LLC*, 59 So. 3d 1173, 1176 (Fla. 4th DCA 2011) (citing *Vargas v. Schweitzer–Ramras,* 878 So.2d 415, 417–18 (Fla. 3d DCA 2004) and *Feldman v. Davis,* 53 So.3d 1132,1137 (Fla. 4th DCA 2011). For instance, in *Feldman*, which Respondent relies on, the court held that "if the mandatory arbitration provision in the contingency fee agreement does not conform with Rule 4–1.5(i), the provision may be unenforceable on its face." *Id.* at 1137. In that case, the written contingency fee agreement did not include the mandatory notice. *Id.* Additionally, the record before the court did not reveal whether the law firm had otherwise advised the client in writing that he should consider obtaining independent legal advice regarding the mandatory arbitration provision. *Id.* The appellate court reasoned that if the attorney does not advise the prospective client, by separate writing, to seek independent legal advice, then *the specific notice* in the agreement which contains the mandatory arbitration provision *must be in bold print*. *Id.* at 1136-37. The court did not address whether the lack of bold typeface would render the agreement unenforceable.

---

[5] There is, however, a dispute as to the notice provided here. Gerald Dino, Bishop Emeritus of the Byzantine Catholic Eparchy of Phoenix, who was principally responsible for retaining Burri Law, declares that "[a]t no time was there any discussion that disputes under the Agreement would have to be arbitrated, much less in Florida." [Doc. 36-3 ¶ 6]. Dean Burri and Erica Knox affirm that the arbitration provision contained in the Agreements was discussed with their client. [Doc. 28-1 ¶¶ 8, 10; 28-2 ¶¶ 4, 6]. The Court need not resolve this dispute as there is no dispute that the Agreements did not contain the required notice in bold type.

The Fourth District Court of Appeal again addressed Rule 4–1.5(i) in *Owens v. Corrigan*, 252 So. 3d 747 (Fla. 4th DCA 2018). As in *Feldman*, the retainer agreement in *Owens* "did not contain the required warning under Florida Bar Rule 4–1.5(i)." *Id.* at 751. The court held that the agreement was unenforceable on its face. *Id.* at 750. The court reasoned that because the retainer did not contain the required warning, "the plaintiff was never placed on notice that she should consider consulting with another lawyer before signing an agreement with mandatory arbitration requirements." *Id.* at 751.

The case at bar presents a different issue. Unlike *Feldman* and *Owens*, the Agreements in this case did in fact contain the required notice advising the client to consult another attorney before agreeing to binding arbitration. However, that notice was not in bold type as Rule 4-1.5 requires. Rather, it was in the same font, size, and style as the other portions of the Agreements and blended right in. Our courts have always recognized that bold print adds emphasis and thus attracts greater attention. *See, e.g.*, *In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1279–80 (11th Cir. 2012) (arbitration provision was conspicuous, as it appeared prominently on the first page of the BSA, is clearly labeled "arbitration agreement," and portions of the provision are printed in bold, capital letters, and in larger font than the surrounding text); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1138-39 (11th Cir. 2010) (reasoning that arbitration and class action clauses were clearly demarcated from the rest of the document and emphasized by being in either bold, all caps, boxes, or all three and distinguishing cases in which unconscionable clauses were found in small print or buried within agreements); *Bank of Am., N.A. v. Fla. Glass of Tampa Bay, Inc.*, No. 8:16-CV-02104-27AAS, 2017 WL 11017883, at *5 (M.D. Fla. Aug. 18, 2017) (jury trial waiver provision in Forbearance Agreement was conspicuous as the provision is the last numbered paragraph before the parties' signatures and is set off in its own

paragraph, in capital letters, bold font, and plain language, and is preceded by the capitalized, underlined, and bolded title "**WAIVER OF JURY TRIAL**"); *Bakrac, Inc. v. Villager Franchise Sys., Inc.,* No. 02-23434-CIV-HUCK, 2003 WL 25730511, at *3 (S.D. Fla. Nov. 3, 2003) (stating that jury waiver clause in Franchise Agreement was conspicuous, where it was printed in bold lettering which clearly emphasized the clause, and set it apart from the preceding portions of the agreement, which are in regular print).

The Court agrees with Respondent that Petitioner did not comply with the mandatory requirements of Rule 4-1.5. Undisputedly, the arbitration notice in the Agreements was not in bold type. Moreover, the Court will construe the bold type requirement against the Petitioner and hold that this noncompliance rendered the arbitration provision unenforceable. *See Mintz & Fraade, P.C.*, 59 So. 3d at 1176. Petitioner's motion for summary judgment is therefore due to be denied on this basis, and Respondent's motion for summary judgment is due to be granted.

### *Arbitrability of Dispute*

Even if the arbitration provision in the Agreements was determined to be enforceable, Respondent has raised issues as to Petitioner's competence and handling of the Arizona federal litigation, which go beyond entitlement and amount. Moreover, the parties do not agree that all the evidence bearing on the disputed issues of fact may be heard in 8 hours or less.

Generally, the language of an agreement to arbitrate determines whether a dispute is subject to arbitration. *Fialek*, 2019 WL 660824, at *4. In this case, the Agreements at issue state that "any dispute regarding attorney's fees paid, charged, or claimed for legal services rendered in connection with this representation shall be resolved through binding arbitration," and expressly incorporate by reference "[t]he provisions regarding fees for legal services contained in Rule 4-1.5 of the Rules

Regulating the Florida Bar (Chapter 4, Rules of Professional Conduct)." [Doc. 1 ¶ 8, Doc. 26 ¶ 8].

Additionally, the parties expressly adopted and agreed to be bound by Chapter 14 of the Rules. *Id.*

Chapter 14 lays out certain jurisdictional limits to fee arbitration. Rule 14-1.2(a) provides as follows:

> **(a) Fee Arbitration.** The program has jurisdiction to resolve disputes between members of The Florida Bar or between a member of The Florida Bar and a client or clients over a fee paid, charged, or claimed for legal services rendered by a member of The Florida Bar when the parties to the dispute agree to arbitrate under the program either by written contract that complies with the requirements of subdivision (i) of rule 4-1.5 or by a request for arbitration signed by all parties, or as a condition of probation or as a part of a discipline sanction as authorized elsewhere in these Rules Regulating The Florida Bar. Jurisdiction is limited to matters in which:
>
> (1) there is no bona fide disputed issue of fact other than the amount of or entitlement to legal fees; and
> (2) it is estimated by all parties that all the evidence bearing on the disputed issues of fact may be heard in 8 hours or less.
>
> The program does not have jurisdiction to resolve disputes involving matters in which a court has taken jurisdiction to determine and award a reasonable fee to a party or that involve fees charged that constitute a violation of the Rules Regulating The Florida Bar, unless specifically referred to the program by the court or by bar counsel.
>
> The program has authority to decline jurisdiction to resolve any particular dispute by reason of its complexity and protracted hearing characteristics.

R. Regulating Fla. Bar 14-1.2(a). Respondent argues that this Rule precludes arbitration because (i) there are bona fide disputed issues of fact other than the amount of or entitlement to legal fees and (ii) the evidence bearing on the disputed issues of fact cannot be heard in less than 8 hours. [Doc. 36 at p. 7-11, Doc. 43 at 4].

12

### *a. Issues other than amount and entitlement*

Petitioner contends that the assertions concerning its legal services are not material to the Court's decision on the petition. [Doc. 29 at p. 14]. Petitioner's argument that Respondent's claim that arbitration is precluded by a dispute concerning Petitioner's entitlement to fees—due to allegations of professional negligence or malpractice is—circuitous and unavailing. *Id.* at pp. 14-16. Petitioner then references *Owens*, which purportedly explains that "an attorney's entitlement to recover fees depends in large part upon the competence of the attorney's performance." *Id.* at p. 15. Petitioner also contends that claims regarding "fraud" or an "unfair and deceptive trade practice," even were they "colorable," do not present issues material to this cause, and are not impediments to the Court deciding the cause summarily. *Id.* at 16-17. Respondent vigorously disputes that entitlement to fees and amount are the only disputed facts here. [Doc. 36 at pp. 7-8]. Specifically, Respondent explains that there is a tenable malpractice claim against Petitioner, which may not be arbitrated as part of the Florida Bar's fee arbitration program, and that if any portion of Petitioner's fee demands is actually awarded, that amount represents damage caused to Respondent by Petitioner. *Id.* at pp. 8-9.

Respondent raised these same arguments in its motion for summary judgment. There, Respondent contends that whether an attorney is entitled to recover fees "depends in large part upon the competence of the attorney's performance," and that whether Respondent is entitled to any fees or whether the fees billed by Respondent should be reduced cannot be answered without considering the claims relating to competence. [Doc. 43 at pp. 4-5 (citing *Owens*, 252 So. 3d at 751)]. Respondent further explained that the issue of competence is being litigated in state court in Arizona, where attorney malpractice and related claims that fall outside of the Florida Bar's arbitration proceedings, and which are fundamental to the fee dispute are pending. [Doc. 43 at 4-

13

8]. According to Respondent, the questions raised in the Arizona state court action go beyond entitlement to fees or the mere amount and must be litigated in order to determine Petitioner's entitlement to fees. *Id.* at 8-9. To the contrary, Petitioner argues that whatever argument Respondent may raise in opposing its entitlement to fees or the amount does not have any bearing on the issue of whether the dispute must be arbitrated. [Doc. 44 at 8-9]. Petitioner further reminds the Court that the cause is before the Court exclusively on its demand for an order compelling arbitration of a claim to be paid attorney's fees and not a claim by Respondents to recover money, to which a stay and referral to arbitration is demanded. *Id.* at 8.

While the language employed in the Agreements—"any dispute regarding attorney's fees paid, charged, or claimed for legal services"—is broad, the issue as to Petitioner's competence[6] in performing work that generated the fees at issue in this case takes the dispute beyond the routine disputes of entitlement and amount. Petitioner's motion is supported by a sworn declaration from Mr. Burri, which presents some details as to his education and qualification. [Doc. 28-1]. There, he explains that he founded Burri and Company Insurance Agency in 1988, which served the Catholic Church; attended and completed law school at St. Thomas University Law School and obtained LL.M.s in taxation and employee benefits from Georgetown University Law Center and John Marshall Law School respectively; testified at deposition as the expert for a health insurer; and spoke frequently at insurance and ERISA conferences, and industry trade shows. *Id.* ¶¶ 3-6]. In opposition, Respondent provided evidence that "Dean Burri held himself out to be an expert on ERISA, with over 28 years of experience in ERISA matters," and also "held himself out to be very familiar with Canon Law, which is the law governing the Catholic Church." [Doc. 36-1 at pp. 15-

---

[6] Pursuant to Rule 4-1.1, "[c]ompetent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

16 ¶¶ 5, 6]. Respondent also attached the invoice from Burri Law showing a total due in the amount of $701,508.67, and reflecting an hourly rate of $750.00 for attorney Dean Burri and $550.00 for associate attorney Erica Knox. [Doc. 36-2]. A sworn declaration from Marc Lieberman was also provided, positing that Mr. Lieberman was "aware of no law firm in the state of Arizona that customarily charges $750.00 per hour for any lawyer who has not yet celebrated the third-year anniversary of their admission to practice." [Doc. 36-3 ¶ 5]. The conflict in the evidence before the Court on Petitioner's motion for summary judgment—though directed in part to the question of amount—sufficiently demonstrates that the dispute goes well beyond solely entitlement and amount and further warrants denial of Petitioner's motion.

The evidence supporting Respondent's motion for summary judgment further underscores that the competence of Petitioner's representation has been placed in issue and takes the dispute beyond the scope of what The Florida Bar's fee arbitration provision is designed to address. Respondent presents the complaint in the action it filed in The Superior Court of the State of Arizona, which asserts four claims against Petitioner including one for attorney malpractice and one for violations of the Arizona Consumer Fraud Act. [Doc. 43-1]. In that lawsuit, Respondent alleged—among other things—that Petitioner persuaded Respondent to file a federal action against the fiduciaries of Respondent's employee benefits plan, and in prosecuting that action, Petitioner exposed the Plan and its fiduciaries to significant fines and regulatory liability, and improperly joined parties in violation of Canon Law, which ultimately resulted in dismissal of the action. *Id.* at ¶¶ 18, 21-27. Respondent also alleged that attorney Burri represented he was "thoroughly familiar with Canon Law and Church politics" and "should have known that joinder of the[] Church officials was fatal to the case." *Id.* ¶¶ 25, 26. The declaration filed in response to Plaintiff's motion was also incorporated by reference. [Doc. 43 at pp. 1-2]. Because of these claims, an

15

arbitration proceeding commenced pursuant to The Florida Bar's fee arbitration provision cannot resolve the claim for attorney's fees without going beyond entitlement and amount as they are inextricably intertwined with the issues as to Petitioner's competence in representing Respondent in the employee benefits action that generated the fees at issue. Jurisdiction for The Florida Bar's fee arbitration provision is limited to matters in which "there is no bona fide disputed issue of fact other than the amount of or entitlement to legal fees." *See* R. Regulating Fla. Bar 14-1.2(a)(1). That is not the case here.

### b. *Eight-hour requirement*

Subsection (a)(2) limits the disputes that can be arbitrated to only those matters where "all the evidence bearing on the disputed issues of fact may be heard in 8 hours or less." R. Regulating Fla. Bar 14-1.2(a). Petitioner argues that whether the arbitration can be completed in 8 hours or less is a procedural matter to be raised in arbitration. [Doc. 29 at p. 18]. In response, Respondent contends that the evidence may not be heard in 8 hours or less, and because Rule 14-1.2(a) requires the agreement of both parties, Petitioner cannot unilaterally create jurisdiction. [Doc. 36 at p. 11].

The eight-hour jurisdictional requirement goes to the arbitrability of the dispute. As the Eleventh Circuit has noted " '[a]rbitrability ' is said to involve the jurisdiction of the arbitration panel...." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 (11th Cir. 2004) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Texas Steel Co.,* 639 F.2d 279, 281 (5th Cir.1981)). "[Q]uestions of arbitrability are better understood as substantive questions, rather than as 'procedural' issues 'which grow out of the dispute and bear on its final disposition.' " *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1545, 203 L. Ed. 2d 711 (2019). As such, Petitioner's argument that whether the arbitration can be conducted within 8 hours

16

should be left to the arbitrator is without merit and can be resolved by the Court as a question of substance.

Respondent has also moved for summary judgment on this same issue. It argues that the claims raised in its Arizona state court lawsuit against Petitioner, including malpractice and fraud, must be litigated in order to determine whether Petitioner is entitled to fees and the amount, and that this cannot be done in eight hours or less. [Doc. 43 at pp. 8-9]. This is supported by the sworn declaration of Marc Lieberman, one of the attorneys representing Respondent in Arizona, who states that based on his experience and expertise the Arizona proceeding will require ten days of trial, and will include testimony of at least three expert witnesses for each party. [Doc. 43-2 ¶¶ 5-6]. In response, Petitioner again argues that the eight-hour requirement is procedural and should be left to the arbitrator. [Doc. 44 at pp. 9-10]. Petitioner also provides a sworn declaration from attorney Dean Burri, who states that he has "unequivocal first-hand knowledge of the actual facts and circumstances at issue" and based upon this knowledge "the actual issues to be heard will not require more than eight (8) hours to present." [Doc. 44-1 ¶¶ 2-3]. Clearly, the parties do not agree as to the amount of time needed to resolve the disputed issues of fact.

Subsection (2) requires that "all parties" must estimate that all the evidence bearing on the disputed issues of fact may be heard in 8 hours or less. R. Regulating Fla. Bar 14-1.2(a)(2). The ordinary meaning of the Rule as applied to this case is that both Petitioner and Respondent must both estimate that eight hours or less is required. *See Interactive Commc'ns Int'l, Inc. v. Great Am. Ins. Co.*, 731 F. App'x 929, 933–34 (11th Cir. 2018) ("The ordinary meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments.") (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal \*934 Texts* at 69 (2012)). Based on the evidence before the Court, there is no material issue

of fact that "all parties" do not agree on this point. Therefore, this fee dispute does not fall within The Florida Bar's fee arbitration provision, as that provision is limited to certain types of fee disputes.

In conclusion, the arbitration provisions in the Agreements do not comply with The Florida Bar's Rules and, therefore, are unenforceable. Even if the arbitration provisions in the Agreements are enforceable, this fee dispute does not fall within the jurisdictional requirements of The Florida Bar's fee dispute arbitration provisions. Respondent will not be compelled to arbitrate its dispute with Petitioner regarding attorney's fees paid, charged or claimed for legal services provided by Petitioner. Accordingly, Petitioner's motion for summary judgment will be denied. Respondent's motion for summary judgment will be granted.

According, it is hereby ORDERED:

1. Petitioner's Motion for Summary Judgement [Doc. 28] is **DENIED**. Respondent is not compelled to arbitrate its dispute with Petitioner regarding attorney's fees paid, charged or claimed for legal services provided by Petitioner.
2. Respondent's Motion for Summary Judgment [Doc. 43] is **GRANTED**.

**DONE AND ORDERED** in Tampa, Florida on September 9, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies: All Parties of Record